## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MICHAEL E. SULLIVAN, JR.,

    Plaintiff,

      v.

W. MICHAEL MALOOF, JR.,
d/b/a THE MALOOF LAW FIRM,

    Defendant.

Civil Action No.:

**1:25-cv-02006-JPB**

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 15 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

## PLAINTIFF'S AMENDED MOTION FOR COSTS OF SERVICE AGAINST DEFENDANT MALOOF PURSUANT TO FED. R. CIV. P. 4(D)(2) [DOC. 11]

Plaintiff Michael E. Sullivan, Jr., proceeding *pro se*, respectfully moves for an Order pursuant to Fed. R. Civ. P. 4(d)(2) compelling Defendant W. Michael Maloof, Jr. to pay the costs of service. In support thereof, Plaintiff shows the Court as follows:

### INTRODUCTION

Plaintiff Michael E. Sullivan, Jr., proceeding *pro se*, moves for an Order compelling Defendant W. Michael Maloof, Jr., an officer of this Court, to pay the costs of service he deliberately caused. Defendant's refusal to waive service was not an isolated act but the opening salvo in a documented campaign of procedural abuse. After acknowledging the lawsuit and consulting two attorneys, Defendant refused to sign the waiver, yet exploited its 60-day response benefit by filing his Answer on the precise deadline. He then inaugurated a pattern of hiding his filings, improperly serving five consecutive

1

documents on a *pro se* opponent. This conduct, which Defendant himself has described as "guilty of taking advantage" (Complaint ¶ 73, Ex. 31), demonstrates why this Court "must impose" costs under Fed. R. Civ. P. 4(d)(2).

## PROCEDURAL POSTURE

Defendant's refusal to waive service is part of a persistent pattern of selective rule compliance. This pattern demonstrates Defendant's selective compliance with procedural rules—scrupulously following them when strategically advantageous while flagrantly violating them when serving mandatory responsive pleadings on a *pro se* opponent.

## I.    The Initial Service Violations (June 16-17, 2025)

On June 16 and 17, 2025, Defendant filed his Answer [Doc. 4] and a Motion to Strike [Doc. 5]. The certificates of service for both filings falsely certified that service was made via the Court's CM/ECF system on "all attorneys of record." As a *pro se* litigant, Plaintiff is not a registered user and has no attorneys of record. This constituted a clear violation of Fed. R. Civ. P. 5, Local Rule 5.1(A)(3), and this Court's Standing Order [Doc. 3]. On June 24, 2025, Plaintiff was forced to file a Motion to Compel Service [Doc. 6] to address Defendant's failure to serve these mandatory pleadings.

## II.    Proof of Selective Compliance (June 27, 2025)

Only after Plaintiff filed his Motion to Compel did Defendant's counsel demonstrate their actual ability to comply with service rules. On June 27,

2

2025, counsel properly served a Rule 68 Offer of Judgment on Plaintiff via certified mail. This timing—three days after the Motion to Compel—proves Defendant and his counsel are fully capable of complying with service rules when strategically advantageous but choose not to when serving mandatory responsive pleadings.

## III.  The Pattern Continues: Escalating Service Violations

On July 8, 2025, Defendant filed a Response to the Motion to Compel Service [Doc. 12]. In stunning irony, this response—which attempted to excuse the prior service failures—was itself served improperly. The Certificate of Service certified service via first-class mail only, omitting the mandatory email service required by this Court's Standing Order [Doc. 3]. This violation occurred despite Plaintiff's June 24, 2025 letter [Doc. 6, Ex. A] specifically reminding counsel of the dual-service obligation.

On July 10, 2025, Defendant's second attorney, William S. Cleveland, filed a formal Notice of Appearance [Doc. 13] with a doubly defective Certificate of Service. First, it certified service to a non-existent email address: "msullicanjr@gmail.com" (note the missing "n" in "Sullivan"). Second, it omitted the mandatory mail service component required for *pro se* parties. The email address error is particularly revealing—it demonstrates either gross negligence or deliberate misdirection, as the correct email address appears

fifteen (15) times in the Complaint [Doc. 1] and has been used in all correspondence.

On July 11, 2025, Defendant filed another Response [Doc. 14] with a Certificate of Service stating that service would occur "on Monday, July 14th, 2025"—three days after filing. This certificate admits that contemporaneous service, as required by the Rules, did not occur.

## IV.    Defendant's Selective Compliance Proves Bad Faith

This sequence demonstrates Defendant and his counsel's calculated approach to procedural compliance. They have now filed five consecutive documents with defective service, each using different combinations of violations:

1.    On June 16, 2025, Defendant's Answer [Doc. 4] was filed with no service on Plaintiff, violating Federal Rule of Civil Procedure 5(a)(1), Local Rule 5.1(A)(3) of the Northern District of Georgia, and this Court's Standing Order.

2.    On June 17, 2025, the Motion to Strike [Doc. 5] repeated the exact same service failure.

3.    On July 8, 2025, the Response [Doc. 12] was served by mail but deliberately omitted the mandatory email component required by the Court's Standing Order.

4.      On July 10, 2025, the Notice of Appearance [Doc. 13] failed on two
        fronts: it used an incorrect email address and omitted the required
        mail component.

5.      On July 11, 2025, the Certificate of Service for the Response [Doc.
        14] openly admitted service would not occur contemporaneously,
        but three days after the filing deadline.

Yet on June 27, 2025, between these violations, they properly served a Rule 68
Offer via certified mail with correct addressing. This proves their violations
are not mistakes but calculated decisions to comply with rules only when it
serves their strategic interests.

## V.    The Larger Pattern of Procedural Misconduct

The refusal to waive service detailed herein is part of this broader
pattern of procedural misconduct. Defendant first extracted the 60-day waiver
deadline benefit without signing the waiver, then systematically violated
service rules on every subsequent filing while demonstrating perfect
compliance when serving strategic documents like settlement offers. This
conduct reflects Defendant's admitted pattern of being "guilty of taking
advantage" (Complaint ¶ 73, Ex. 31) and not following "the law" (Complaint ¶
92(b), Ex. 36) when it doesn't serve his interests.

## STATEMENT OF FACTS

This motion concerns Defendant W. Michael Maloof, Jr., an attorney, and his calculated refusal to comply with the Federal Rules of Civil Procedure. The following facts, supported by Plaintiff's declaration [Doc. 10] and attached exhibits, detail how Defendant acknowledged this lawsuit, consulted with legal counsel, extracted the benefits of the waiver process, yet refused to sign the waiver—forcing Plaintiff to incur unnecessary costs.

## I. Prior Communications Establish Defendant's Actual Knowledge

1.  On October 21, 2024, prior to filing this action, Plaintiff informed Defendant via email of his intent to file a complaint: "I assume you'll waive service. I'll keep you posted." (Sullivan Decl. ¶ 3, Ex. A) (emphasis added).

2.  Defendant responded that same day: "Sounds good. **I have consulted two attorneys** and will wait for your response..." (Sullivan Decl. ¶ 3, Ex. A) (emphasis added). This response confirms Defendant had actual notice of the impending lawsuit and had already sought legal counsel six months before being sent the waiver request.

## II. The Waiver Request and Defendant's Strategic Timing

3.  On April 11, 2025, Plaintiff filed his Complaint [Doc. 1] in this Court.

6

4.    On April 17, 2025, Plaintiff mailed a complete waiver packet to Defendant at The Maloof Law Firm, 215 N McDonough St, Decatur, GA 30030-3319. The packet included:

   a.    Notice of Lawsuit and Request to Waive Service of Summons

   b.    Copy of the Complaint

   c.    Two copies of the Waiver of Service form

   d.    Prepaid return envelope (Sullivan Decl. ¶ 5, Ex. B).

5.    The waiver packet was sent via USPS Ground Advantage with tracking (No. 9400 1111 0615 0598 8809 68) (Sullivan Decl. ¶ 5, Ex. B).

## III.    Defendant's Pre-Delivery Knowledge and Post-Delivery Acknowledgment

6.    On April 22, 2025, at 11:04 AM—***before*** the waiver packet was delivered—Defendant emailed Plaintiff proposing mediation or binding arbitration. Critically, he referenced having "consulted two attorneys" and wanting to "get this behind us." (Sullivan Decl. ¶ 8, Ex. C). This unsolicited communication demonstrates Defendant's awareness of the lawsuit before receiving formal notice.

7.    According to USPS tracking, the waiver packet was delivered to Defendant's office on April 22, 2025, at 12:57 PM—less than two hours ***after*** his email. (Sullivan Decl. ¶ 9, Ex. D).

7

8.      On April 25, 2025, three days after delivery, Defendant sent a second email explicitly stating: "I acknowledge the service of your complaint." (Sullivan Decl. ¶ 10, Ex. E) (emphasis added). This written acknowledgment confirms Defendant received and reviewed the waiver materials, understood their purpose, yet chose not to execute the waiver.

## IV.    Defendant's Filing of Answer on Precise Waiver Deadline

9.      The deadline for Defendant to return the signed waiver was May 17, 2025—thirty days after the April 17 mailing, as calculated under Fed. R. Civ. P. 4(d)(1)(F) and 6(d).

10.     Despite acknowledging receipt of the complaint and having consulted attorneys, Defendant never returned the signed waiver.

11.     On June 16, 2025—exactly 60 days after the waiver was sent—Defendant filed his Answer [Doc. 4]. This filing date precisely matches the deadline Defendant would have faced had he signed and returned the waiver, which under Fed. R. Civ. P. 4(d)(3) requires a defendant to answer within 60 days after the request was sent. This timing demonstrates Defendant deliberately extracted the extended deadline benefit of waiver compliance without returning the required signature.

8

## V.    Immediate Service Success After Answer Filing

12.    After Defendant failed to return the waiver by the May 17 deadline, Plaintiff demonstrated professional courtesy by waiting until after Defendant's scheduled leave of absence (May 19-23, per Defendant's filed notice) before initiating service. (Sullivan Decl. ¶¶ 11, 12, 13, Ex. F).

13.    On May 28, 2025, Plaintiff engaged ABC Legal Services, paying $85.00 for process service. (Sullivan Decl. ¶ 15, Ex. G).

14.    On May 30, 2025, an ABC Legal process server attempted service on Defendant at his law office. The server's report states: "I spoke with an individual who identified themselves as the jane doe." (Sullivan Decl. ¶ 16, Ex. H).

15.    On June 3, 2025, Plaintiff paid an additional $52.35 to the DeKalb County Sheriff's Office for service. (Sullivan Decl. ¶ 17, Ex. I).

16.    On June 5, 2025, ABC Legal attempted service at Defendant's office. Staff confirmed Defendant was "employed but not available at this time." (Sullivan Decl. ¶ 18, Ex. J). This demonstrates Defendant was present at his office but avoiding service.

17.    On June 17, 2025—one day *after* filing his Answer—Defendant was successfully served. [Doc. 7] (Sullivan Decl. ¶ 23, Ex. M) His sudden availability immediately after filing his Answer on the

calculated deadline further evidences bad faith manipulation of the service rules.

18.    On June 19, 2025, Defendant was also successfully served by ABC Legal Services. (Sullivan Decl. ¶ 25, Ex. N) The ease of service once Defendant had filed his Answer contrasts starkly with his earlier unavailability.

## VI.    Evidence of Consciousness of Guilt

19.    On June 6, 2025, the prepaid return envelope included in the waiver packet was inexplicably mailed from New York City. (Sullivan Decl. ¶ 19, Ex. K). This envelope, which should have contained the signed waiver and been mailed from Georgia, was instead mailed from New York—creating a procedural anomaly that defies any innocent explanation.

20.    On June 8, 2025, while the return envelope was in transit, Defendant sent unsolicited text messages to Plaintiff stating he was "trying to calculate hours" and referencing the employment dispute. (Sullivan Decl. ¶ 21, Ex. L). This communication, coming three days after the failed service attempt, indicates Defendant's awareness of the service efforts and consciousness of guilt regarding the underlying wage claims.

## VII. Costs Incurred

21.    As a direct result of Defendant's failure to waive service, Plaintiff incurred the following documented costs:

    a.    ABC Legal Services: $85.00 (Sullivan Decl. ¶ 15, Ex. G)

    b.    DeKalb County Sheriff: $52.35 (Sullivan Decl. ¶ 17, Ex. I)

    c.    Total: $137.35

## VIII. Timeline Summary: The Mathematical Proof of Defendant's Scheme

The mathematical precision of Defendant's conduct—acknowledging service, evading process servers, then filing exactly on Day 60—reveals his calculated scheme:

**Timeline of Defendant's Calculated Waiver Manipulation**

| Date | Days Post-Mailing | Event |
|---|---|---|
| Apr. 17, 2025 | 0 | Waiver packet mailed to Defendant. (Sullivan Decl. ¶ 5, Ex. B) |
| Apr. 22, 2025 | 5 | USPS confirms waiver packet delivered at 12:57 PM. (Sullivan Decl. ¶ 9, Ex. D) |
| Apr. 25, 2025 | 8 | Defendant emails: "I acknowledge the service of your complaint." (Sullivan Decl. ¶ 10, Ex. E) |
| May 17, 2025 | 30 | Waiver Deadline (30 days) Expires. Defendant does not return waiver. (Sullivan Decl. ¶ 12) |
| May 28, 2025 | 41 | Plaintiff forced to retain ABC Legal for personal service. (Sullivan Decl. ¶ 15, Ex. G) |
| Jun. 3, 2025 | 47 | Plaintiff retains DeKalb County Sheriff for personal service. (Sullivan Decl. ¶ 17, Ex. I) |

| Date | Days Post-Mailing | Event |
|------|-------------------|-------|
| **Jun. 16, 2025** | **60** | **60-DAY WAIVER ANSWER DEADLINE. Defendant silently files Answer – NOT SERVED ON PLAINTIFF. (Sullivan Decl. ¶¶ 7, 22)** |
| **Jun. 17, 2025** | 61 | DeKalb County Sheriff successfully serves now-available Defendant. [Doc. 7] (Sullivan Decl. ¶ 23, Ex. M) |
| **Jun. 19, 2025** | 63 | ABC Legal also successfully serves Defendant. (Sullivan Decl. ¶ 25, Ex. N) |

## LEGAL STANDARD

Rule 4(d)(2) of the Federal Rules of Civil Procedure states that if a defendant "fails, without good cause, to sign and return a waiver," the court **"must impose** on the defendant... the expenses later incurred in making service." Fed. R. Civ. P. 4(d)(2) (emphasis added). The purpose is "to eliminate the costs of service... and to foster cooperation among adversaries and counsel." Fed. R. Civ. P. 4, Advisory Committee's Note to 1993 Amendment.

The Eleventh Circuit has affirmed the mandatory nature of this rule, holding that where defendants "have not shown good cause for the failure to waive service, the court 'must impose' the expenses." *Muhammad v. Jones*, No. 22-12563 (11th Cir. Aug. 25, 2023). The Advisory Committee Notes clarify that "good cause does not include a belief that the lawsuit is groundless" or objections to jurisdiction or venue. As officers of the court, attorneys are held to the "highest standards of professional conduct," *Malautea v. Suzuki Motor*

*Co., Ltd.*, 987 F.2d 1536, 1546 (11ᵗʰ Cir. 1993), and are presumed to know and follow procedural rules.

## ARGUMENT

### I.    Under Binding Eleventh Circuit Precedent, This Court Must Impose Service Costs Because Defendant Had No Good Cause

The Eleventh Circuit's decision in *Muhammad v. Jones* is dispositive. The court's use of the phrase "must impose" removes judicial discretion where, as here, a defendant offers no good cause for failing to waive service. Defendant, an attorney, received the waiver request, acknowledged it in writing, and then chose not to comply. This is the exact scenario Rule 4(d)(2) and *Muhammad* address. As in *Brennan v. Summer WWK LLC*, No. 1:21-cv-00423-MHC (N.D. Ga. Aug. 17, 2021), this Court should find that the defendant had no good cause and grant the motion. This conclusion is consistent with other federal circuits, which have held that it is an abuse of discretion to deny costs. See *Estate of Darulis v. Garate*, 401 F.3d 1060, 1064 (9ᵗʰ Cir. 2005).

### II.    Defendant's Filing of His Answer on the 60-Day Waiver Deadline Demonstrates He "Took Advantage" of the Rules

Defendant admitted being "guilty of taking advantage" in the underlying employment dispute. (Complaint ¶ 73, Ex. 31). He did exactly that here— extracting the 60-day extended response period without signing the waiver. By filing his Answer [Doc. 4] precisely on June 16, 2025—exactly 60 days after the

waiver was sent—Defendant revealed his calculated scheme. This timing is not coincidental; it is mathematical proof of premeditated deception.

This Day 60 filing creates an inescapable logical trap for Defendant. He has only two possible defenses to this Motion: (1) claim he properly returned the waiver, or (2) claim he had good cause to refuse. The Day 60 filing destroys the second defense entirely—one cannot claim ignorance or confusion while mathematically calculating and meeting the exact waiver deadline. This leaves only the first defense, which is demolished by his failure to serve the Answer on Plaintiff, as detailed in Section V below. No innocent explanation exists for hiding your Answer from the very party you're answering.

## III.   Defendant Weaponized His Professional Knowledge to Exploit a *Pro Se* Litigant

Defendant's admission of consulting "two attorneys" establishes that his misconduct was not born of ignorance but was calculated professional abuse. He possessed specialized knowledge of procedural rules that he weaponized to frustrate the judicial process and exploit Plaintiff's *pro se* status. This exploitation is part of a broader pattern that did not end with the waiver. As documented, it has escalated into five consecutive filings with defective service, proving a systematic effort to disadvantage a *pro se* opponent while selectively complying with the rules only when it serves a strategic purpose, such as serving a settlement offer. The Federal Rules are designed to protect, not

14

disadvantage, *pro se* parties. Defendant's systematic inversion of this purpose mandates cost-shifting.

## IV. Defendant's Evasive Conduct Provides Further Evidence of Bad Faith

The pattern of evasion provides compelling evidence of consciousness of guilt—a multi-state charade of evasion involving process servers and a mysterious envelope from New York:

### A. The New York Envelope Misdirection

The prepaid return envelope was inexplicably mailed from New York City on June 6, one day after the second failed service attempt. (Sullivan Decl. ¶ 19, Ex. K). This geographic impossibility—an envelope that should have been mailed from Georgia with a signed waiver instead being mailed from New York—evidences consciousness of guilt through calculated deception designed to create confusion.

### B. The "Calculating Hours" Text

Defendant broke an eight-month communication silence to send texts about "trying to calculate hours" on June 8, just three days after the failed service attempt. (Sullivan Decl. ¶ 21, Ex. L). This unsolicited communication about the wage dispute demonstrates awareness of the service efforts and consciousness of guilt regarding the underlying employment claims.

As a direct result of Defendant's failure to waive service and his subsequent evasion, Plaintiff was forced to retain both ABC Legal Services and

the DeKalb County Sheriff's Office. These costs are fully recoverable, as this Court has held that the rules permit recovery of "all of the time spent by a process server in an attempt to serve the defendant." *SPE GO Holdings, Inc. v. Anzo*, NO. 2:10-CV-00215-WCO, 2012 WL 13018386, at \*3 (N.D. Ga. March 30, 2012). The mere $137.35 in documented costs represents a nominal amount that makes Defendant's resistance particularly telling—suggesting his refusal stems not from the amount but from consciousness of wrongdoing.

## C.   *Strategic Unavailability Followed by Immediate Availability*

Despite being "employed but not available" on June 5 when process servers arrived, Defendant became immediately available for service on June 17—one day after filing his Answer. This sudden accessibility once he had extracted the 60-day deadline benefit reveals the calculated nature of his evasion. The fact that he filed his Answer without serving Plaintiff further confirms he knew his conduct violated the rules and sought to hide it.

Such calculated evasion and procedural manipulation has been squarely condemned. See *Dolphin Cove Inn, Inc. v. Vessel Olympic Javelin*, No. 3:19-cv-1018-J-34JRK, 2020 WL 9613941, at \*12 (M.D. Fla. Dec. 22, 2020) (finding bad faith where defendant stated he would not cooperate with service).

## V.    Defendant's Silent Filing Proves Consciousness of Guilt

Defendant's consciousness of guilt is most starkly revealed by the fact that he filed his Answer silently. A defendant who had properly returned the signed waiver would have expected to see it filed on the docket record. When filing his Answer on Day 60, such a defendant would have noticed the waiver's absence and either contacted the Court or Plaintiff to inquire about the missing filing, or attached proof of mailing to demonstrate compliance. Defendant did neither. He made no inquiry about any missing waiver filing, nor did he provide proof that he had returned the signed waiver. This silence reveals the truth that Defendant failed to return the waiver. Most critically, instead of serving his Answer as required, Defendant filed it silently on June 16, 2025 [Doc. 4], failing to provide a copy to Plaintiff in clear violation of Fed. R. Civ. P. 5, Local Rule 5.1(A)(3), and this Court's Standing Order.

This silent filing—attempting to hide his Answer from Plaintiff—proves Defendant knew no valid waiver existed. Why conceal your filing unless you know you're violating the rules? This consciousness of guilt demolishes any possible claim that Defendant believed he had properly returned the waiver. An attorney confident in his procedural compliance would serve documents normally, not hide them from his opponent. Notably, Defendant filed a Motion to Strike the very next day [Doc. 5], also without serving Plaintiff— establishing a pattern of secret filings designed to gain procedural advantages

while keeping Plaintiff in the dark. This pattern of secret or defective filings was not a one-time act. It became Defendant's standard practice for every mandatory pleading and response that followed, confirming that the initial decision to hide his Answer was the start of a calculated litigation strategy.

## VI. The Court Must Impose Costs to Preserve Procedural Integrity

Defendant's conduct wasted the resources of multiple institutions:

a. The Plaintiff's time and money

b. ABC Legal Services' efforts

c. The DeKalb County Sheriff's Office's resources

d. The United States Postal Service's handling of misdirected mail

e. This Court's time addressing preventable motion practice

When an attorney who admits he doesn't "follow the law" (Complaint ¶ 92(b), Ex. 36) systematically abuses procedural rules against a *pro se* litigant, this constitutes procedural sabotage that cost-shifting serves to deter. The silent filing of responsive pleadings—attempting to hide from the very party he's responding to—represents such an egregious departure from professional norms that meaningful sanctions are essential. Indeed, Defendant's entire course of conduct—from calculated waiver evasion to multi-state envelope schemes to secret filings—demonstrates a flagrant disregard for both professional ethics and the Federal Rules of Civil Procedure. It deters other attorney-defendants from similar gamesmanship and upholds the integrity of

the Federal Rules. The mandatory language of Rule 4(d)(2)—the court "must impose" costs—exists precisely for cases like this where professional knowledge is weaponized against the judicial process.

This Court has not hesitated to sanction parties who frustrate judicial processes. In *Nelson v. PJ Cheese*, Inc., No. 4:20-CV-00242-JPB, 2023 WL 4506307 (N.D. Ga. July 12, 2023), Judge Boulee awarded fees for post-judgment collection efforts, condemning a party's refusal to comply with valid court orders. Defendant's pre-answer evasion here is an even more fundamental assault on judicial efficiency.

## CONCLUSION

Defendant's conduct constitutes an unambiguous and calculated assault on the Federal Rules. An attorney who acknowledges a lawsuit, consults counsel, and receives a waiver request has no good cause to refuse it. An attorney who then exploits the 60-day deadline without signing, hides his Answer from a *pro se* plaintiff, and follows with a documented pattern of four more defective filings has demonstrated profound bad faith. Defendant's own admissions that he is "guilty of taking advantage" (Complaint ¶ 73, Ex. 31) and doesn't "follow the law" (Complaint ¶ 92(b), Ex. 36) merely confirm what the procedural record makes plain. Under the mandatory provisions of Rule 4(d)(2) and binding Eleventh Circuit precedent, this Court must, under the plain

language of Rule 4(d)(2), impose the costs of service to vindicate the Federal

Rules and deter such flagrant abuse.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court grant this

Motion and:

(1)    Order Defendant to pay Plaintiff $137.35 in documented service
       expenses pursuant to Fed. R. Civ. P. 4(d)(2);

(2)    Grant such other and further relief as the Court deems just and
       proper to deter future professional misconduct and maintain the
       integrity of the judicial process.

Respectfully submitted this 15th day of July, 2025.

**Michael E. Sullivan, Jr.,**
Plaintiff *pro se*
3324 Peachtree Road NE, Unit 1405
Atlanta, GA 30326
(678) 372-3000
msullivanjr@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing
**PLAINTIFF'S AMENDED MOTION FOR COSTS OF SERVICE
AGAINST DEFENDANT MALOOF PURSUANT TO FED. R. CIV. P.
4(D)(2) [Doc. 11]** was served upon Defendant's counsel by depositing the same
in the United States Mail, first class postage prepaid, addressed as follows:

*Withdrawing Counsel of Record:*

Bryan J. Henderson, Esq.
William S. Cleveland, Esq.
GUILMETTE HENDERSON, LLC
1355 Peachtree St. NE, Suite 1125

Atlanta, Georgia 30309-4902

*Proposed New Counsel:*

Chadwick L. Williams, Esq.
Kabat Chapman & Ozmer LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363

This, the 15th day of July, 2025.

**Michael E. Sullivan, Jr.,**
Plaintiff *pro se*
3324 Peachtree Road NE, Unit 1405
Atlanta, GA 30326
(678) 372-3000
msullivanjr@gmail.com

## FONT AND POINT CERTIFICATION

The undersigned Plaintiff hereby certifies that the within and foregoing **PLAINTIFF'S AMENDED MOTION FOR COSTS OF SERVICE AGAINST DEFENDANT MALOOF PURSUANT TO FED. R. CIV. P. 4(D)(2) [Doc. 11]** was prepared using Century Schoolbook, 13-point font in accordance with LR 5.1(C).