UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FILED IN CLERK'S OFFICE
U.S.D.C. - Atlanta

JUL 2 5 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

MICHAEL E. SULLIVAN, JR.,

    Plaintiff,

    v.

W. MICHAEL MALOOF, JR.,
d/b/a THE MALOOF LAW FIRM,

    Defendant.

Civil Action No.:

**1:25-cv-02006-JPB**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE SETTLEMENT COMMUNICATIONS UNDER FEDERAL RULE OF EVIDENCE 408 [DOC. 5]

COMES NOW Plaintiff Michael E. Sullivan, Jr., proceeding pro se, and—pursuant to Fed. R. Civ. P. 7(b) and Local Rule 7.1—files this Response in Opposition to Defendant's Motion to Strike Settlement Communications under Fed. R. Evid. 408 [Doc. 5]. As Defendant has conceded, proper service of the Motion was not effectuated until July 8, 2025 [Doc. 14]. Pursuant to Local Rule 7.1(B) and Fed. R. Civ. P. 6(d), Plaintiff's response deadline is July 25, 2025, making this Response timely filed. In support thereof, Plaintiff respectfully shows the Court as follows:

## INTRODUCTION

Defendant's Motion fundamentally misconstrues the purpose and scope of Federal Rule of Evidence 408. The communications he seeks to strike are not offered to prove liability for the underlying wage dispute. Instead, they are

1

direct, indispensable evidence admissible for several permissible "other purposes."

First, many of the communications *are* the retaliatory acts and bad-faith conduct that form the basis of Plaintiff's claims; they are not evidence *about* a claim, they are evidence *of* the claims themselves. Second, they contain Defendant's own explicit admissions of wrongdoing, which are quintessential evidence of the willfulness required to support liquidated damages and a three-year statute of limitations under the FLSA. Third, they are essential to proving the elements of Plaintiff's supplemental state law claims.

This Motion is not a good-faith effort to apply an evidentiary rule; it is a tactical attempt to hide the very evidence that proves Defendant's pattern of misconduct—a pattern that began with the conduct underlying this lawsuit and has continued through his counsel's repeated procedural violations before this Court. Because striking these allegations would gut the core of Plaintiff's Complaint and reward a litigant's attempt to conceal his own admissions, the Motion must be denied.

## STATEMENT OF THE CASE

## I.    Procedural Posture

Defendant's Motion to Strike was born from a pattern of procedural abuse that has defined this case from its inception. This pattern began before any responsive pleading was filed:

First, Defendant, an attorney, received Plaintiff's waiver request, acknowledged in writing, "I acknowledge the service of your complaint" [Doc. 10, Ex. E], yet failed to return the signed waiver. Instead, he exploited the 60-day response period afforded by the waiver rule, filing his Answer on the precise deadline [Doc. 4] while forcing Plaintiff to incur the costs of formal service.

Second, after being personally served by the DeKalb County Sheriff's Office [Doc. 7], Defendant's counsel then failed to serve either the Answer or the instant Motion to Strike on Plaintiff, falsely certifying that service was completed via the Court's CM/ECF system.

Third, this purported "mistake" was exposed as a tactic when, just three days after Plaintiff filed a Motion to Compel Service [Doc. 6], the same counsel effectuated perfect service of a strategic Rule 68 Offer of Judgment via certified mail [Doc. 9, Ex. A]. Only after manufacturing this delay did counsel serve the outstanding pleadings, conceding their error [Doc. 12].

The result of this conduct is a docket cluttered with remedial motions [Docs. 6, 11] necessitated by an attorney-defendant's deliberate gamesmanship. While the counsel responsible for these actions has since withdrawn [Doc. 17], this Motion remains. It is a misguided attempt to hide from the record evidence of the very pattern of misconduct now on direct display before this Court. It must be denied.

3

## II.    Statement of Facts

### A.    *Facts Essential to Plaintiff's FLSA Retaliation and Bad Faith Claims*

After Plaintiff engaged in protected activity by formally demanding payment for his unpaid wages [Doc. 1, ¶¶ 67-68, 89], Defendant launched a campaign of adverse actions and bad-faith tactics, all documented in the very communications he now seeks to strike:

#### 1.    *Conditioning Offers on an Unethical Waiver*

On December 6, 2023, Maloof stated:

> **"I will offer 15K. With two conditions payment will be made in two parts 10K next week and 5K when we get a release that the court approves. The release will prevent all future claims and any grievances filed with the bar, no wrongdoing will be admitted."**

[Doc. 1, ¶ 69, Ex. 28 (Dec. 6, 2023)]

Defendant's initial offer was explicitly conditioned on Plaintiff agreeing to such terms. This is a direct violation of Rule 9.2 of the Georgia Rules of Professional Conduct. When Plaintiff put Defendant on notice of this violation, Defendant did not cease his efforts; he merely shifted to more subtle, but equally improper, tactics. [Doc. 1, ¶ 71].

#### 2.    *Threats and Retaliatory Pressure*

On April 22, 2024, Maloof warned:

> **"I was thinking 40K 15 within 30 days, another 15 by the end of September and then 10 next year in the first quarter."**

[Doc. 1, ¶ 91, Ex. 35 (Apr. 22, 2024)]

And also stated:

> **"I just think binding arbitration could go really south for me or a slight chance for you. It would air out some dirty laundry on both sides and if it went bad for me and messed up my relationships with those close to me, you being one of those relationships it would really weigh hard on me and create resentment I could not see myself overcoming."**

[Doc. 1, ¶ 125(c), Ex. 35 (Apr. 22, 2024)]

Defendant threatened Plaintiff with consequences if he pursued his rights, warning that arbitration would damage his reputation with certain groups. [Doc. 1, ¶¶ 125(c), Ex. 35, Ex. 36].

### 3.    *Structurally Coercive Offers*

Defendant repeatedly proposed extended payment plans designed to disincentivize Plaintiff from filing any bar complaint while payments were pending, achieving the same improper chilling effect as his explicit waiver demand. [Doc. 1, ¶¶ 91, 99, 101]. Defendant only abandoned this structure after Plaintiff objected that it was a constructive violation of Rule 9.2, tacitly admitting its improper purpose.

## B.    *Retaliatory Refusal to Pay for Subsequent Work*

On February 26, 2024, Maloof promised:

5

> **"Let me get Liban on it just to teach him but pay you as well."**
>
> [Doc. 1, ¶ 77, Ex. 32 (Feb. 26, 2024, 4:59 PM)]

After promising to pay for the Sutton case work, Defendant refused to do so once Plaintiff continued to press his wage claims, providing shifting and pretextual explanations for his refusal. [Doc. 1, ¶¶ 85, 125(e)].

These communications are not being used as evidence of Defendant's liability for the underlying wage claim. They are the adverse retaliatory actions and bad-faith conduct that form the basis of Plaintiff's claims for FLSA Retaliation (Count III) and Expenses of Litigation (Count IX).

### C. Facts Essential to Proving Willfulness

The FLSA provides a three-year statute of limitations and liquidated damages for willful violations. The challenged communications contain Defendant's own admissions, which are quintessential evidence of his state of mind and reckless disregard for the law:

#### 1. Direct Admissions of Wrongdoing

On December 15, 2023, Maloof admitted:

> **"This is where I am guilty of taking advantage of you. I was just giving you stuff to add value to my cases for free and not billing the client for it."**

[Doc. 1, ¶ 73, Ex. 31 (Dec. 15, 2023)]

### 2.   *Admissions of Improper Motive*

On April 24, 2024, Maloof revealed his assumption-based motive:

**"I assumed Mike has plenty of money and he likes doing this stuff so I don't need to pay him... he is a rich white guy."**

[Doc. 1, ¶ 92, Ex. 36 (Apr. 24, 2024)]

Defendant admitted his motive for non-payment was based on an improper assumption about Plaintiff's financial status.

### 3.   *Knowledge of Ability to Pay*

Defendant's claim of financial hardship is not just contradicted by the evidence—it's an outright lie. On April 24, 2024, Maloof claimed:

**"I know I can do it financially a number much larger all at once could bankrupt me..."**

[Doc. 1, ¶ 93, Ex. 36 (Apr. 24, 2024)]

This supposed financial vulnerability is directly contradicted by his receipt of approximately $374,000 in attorney's fees from the Cooley case—a case on which Plaintiff performed uncompensated work.

**The Cooley case settlement information showing he received ~$374,000 in attorney fees in June 2023, which contradicts his claim of financial hardship. From paragraph 62: "On June 21, 2023, Maloof secured a $1.87 million settlement in the Cooley case Sullivan**

> contributed to in March-April 2022, generating ~$374,000 in attorney fees. Sullivan received no compensation."

[Doc. 1, ¶ 62]

Defendant's claim that a lump-sum payment could cause financial hardship (Doc. 1, ¶ 93) is directly contradicted by the fact that he received approximately $374,000 in attorney's fees from the Cooley case—a case on which Plaintiff performed uncompensated work. (Doc. 1, ¶¶ 41, 62). This demonstrates Defendant had the financial resources to pay Plaintiff but willfully chose not to.

### D.   Facts Essential to State Law Claims and Timeliness

The challenged allegations also provide direct factual support for Plaintiff's state law claims and establish the timeliness of this action.

#### 1.   Expectation of Payment

On December 15, 2023, Maloof acknowledged:

> "This is where I am guilty of taking advantage of you. I was just giving you stuff to add value to my cases for free and not billing the client for it."

[Doc. 1, ¶ 73, Ex. 31 (Dec. 15, 2023)]

On February 26, 2024, Maloof promised:

> "Let me get Liban on it just to teach him but pay you as well."

[Doc. 1, ¶ 77, Ex. 32 (Feb. 26, 2024, 4:59 PM)]

Defendant's promises to pay, along with another attorney's suggestion that Plaintiff invoice the firm, are essential to proving the elements of Quantum Meruit and Promissory Estoppel, which require showing that services were rendered with a reasonable expectation of payment. (Doc. 1, ¶¶ 131, 138).

### 2. *Tolling Agreement*

The Tolling Agreement is explicitly referenced to establish the timeliness of the Complaint. The agreement, executed by both parties, contains a clause permitting its disclosure to the Court for this exact purpose. [Doc. 1, Ex. 43].

## LEGAL STANDARD

### I. Rule 12(f) Standard

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Motions to strike, however, are a "drastic remedy" that are "disfavored" by federal courts and should be "sparingly used." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1057 (5th Cir. 1982). This Court applies an "extraordinarily high standard" and will not grant a motion to strike unless the challenged matter has "no possible relationship to the controversy" and is "so unrelated to plaintiff's claims as to be unworthy of any consideration." *Fathom Realty, LLC v. Am.*

*Home Key, Inc.*, No. 1:13-CV-3569-JPB, 2014 U.S. Dist. LEXIS 179961, at \*13-14 (N.D. Ga. Dec. 18, 2014) (Boulee, J.).

## II.    The Scope and Limits of Rule 408

Federal Rule of Evidence 408 makes evidence of settlement negotiations inadmissible "to prove or disprove the validity or amount of a disputed claim." Fed. R. Evid. 408(a). This prohibition is narrow and serves a specific purpose: to encourage open settlement discussions. The rule is not a blanket prohibition.

Critically, Rule 408(b) explicitly permits the admission of such evidence for "another purpose," such as proving a witness's bias, negating a contention of undue delay, or proving obstruction. Fed. R. Evid. 408(b). Furthermore, the rule's protection does not extend to shielding independent wrongs committed during the negotiation process itself. As the Advisory Committee Notes clarify, Rule 408 is inapplicable when "the claim is based upon a wrong that was committed during the course of settlement negotiations." Fed. R. Evid. 408, Advisory Committee Note to 2006 Amendment.

## ARGUMENT

## I.    Defendant's Motion Fails Under This Court's 'Extraordinarily High Standard' for Striking Pleadings

Defendant's Motion fails at the threshold because it cannot satisfy this Court's exceptionally demanding standard for striking material from a pleading. This Court has repeatedly held that Rule 12(f) motions are a "disfavored" and "drastic remedy" that should be "sparingly used." *See, e.g.,*

*Xfinity Mobile v. Devin Tech. Inc.*, No. 1:21-cv-01234-JPB (N.D. Ga. Aug. 10, 2021). Such motions are often "purely cosmetic or 'time wasters'" that do not advance judicial economy. *Id.* A motion to strike will not be granted unless the challenged matter has "no possible relationship to the controversy." *A.G. v. Northbrook Indus.*, No. 1:19-cv-05678-JPB (N.D. Ga. Mar. 2, 2020).

Here, the challenged allegations are not merely related to the controversy; they are the factual heart of Plaintiff's claims for willfulness, bad faith, and retaliation. Defendant's attempts to condition settlement on the waiver of Plaintiff's right to file a bar grievance are not inadmissible settlement talks; they are direct evidence of the bad faith and retaliation that form the basis of Plaintiff's claims under O.C.G.A. § 13-6-11 and the FLSA. Under this Court's own binding precedent, the Motion must be denied.

## II.    The Challenged Communications Are Admissible as Evidence of Independent Wrongs Committed During Negotiations

Defendant's motion rests on the flawed premise that Rule 408 protects all communications made in a settlement context. It does not. The rule is inapplicable when "the claim is based upon a wrong that was committed during the course of settlement negotiations." Fed. R. Evid. 408, Advisory Committee Notes. That is precisely the situation here. The record documents a clear campaign of professional misconduct, using the settlement process itself as a tool for retaliation.

11

### A.    *Defendant Made an Explicitly Unethical Demand*

Defendant's initial offer was an unambiguous violation of Georgia Rule

of Professional Conduct 9.2:

> **"I will offer 15K. With two conditions payment will be made in two parts 10K next week and 5K when we get a release that the court approves. The release will prevent all future claims and any grievances filed with the bar, no wrongdoing will be admitted."**

[Doc. 1, ¶ 69, Ex. 28 (Dec. 6, 2023)]

### B.    *After Being Warned, He Shifted to Coercive Tactics*

After Plaintiff put him on express notice of the Rule 9.2 violation (Doc.

1, ¶ 71), Defendant did not cease his efforts. Instead, he proposed structurally

coercive payment plans designed to functionally chill Plaintiff's ability to file a

grievance while payments were pending. Doc. 1, ¶¶ 91, 101).

> **"I was thinking 40K 15 within 30 days, another 15 by the end of September and then 10 next year in the first quarter."**

[Doc. 1, ¶ 91, Ex. 35 (Apr. 22, 2024)]

> **"We can do the binding arbitration with a high low or you can accept the 40K in the three installments 15K within 30 days of acceptance, 15K by October 31, 2024, and 10K by the end of March of 2025."**

[Doc. 1, ¶ 99, Ex. 39 (Jun. 10, 2024)]

### C.   *He Escalated His Unethical Demands with a Direct Threat.*

By September 2024, Defendant combined the coercive structure with an

unambiguous threat:

> "If you go forward with the fee arbitration then the offer is rescinded. If you don't accept... or go forward with any fee dispute or other action about my character with the bar then it is off."
>
> [Doc. 1, ¶ 101, Ex. 40 (Sep. 18, 2024)]

## III.   The Communications Serve Multiple Permissible Purposes Under Rule 408(b)

Even if the communications were not evidence of independent wrongs,

they are admissible for multiple "other purpose[s]" expressly permitted by Rule

408(b).

1.      Proving Willfulness: The FLSA provides for liquidated damages

upon a showing of willfulness. Defendant's admissions—"I am guilty of taking

advantage of you" [Doc. 1, ¶ 73, Ex. 31] and "I did not follow the law" (Doc. 1,

¶ 92(b), Ex. 36)—are quintessential evidence of his state of mind and reckless

disregard, making them admissible for this purpose.

2.      Proving Bad Faith: Plaintiff's claim for attorney's fees under

O.C.G.A. § 13-6-11 requires proof of bad faith. The systematic professional

misconduct documented in these communications, from unethical demands to

threats, is essential evidence of that bad faith.

3.     Proving Retaliation: The communications constitute the adverse actions themselves in Plaintiff's retaliation claim. Defendant's threats and refusals to pay were direct retaliatory responses to Plaintiff asserting his FLSA rights.

## IV.   Defendant's Confidentiality Claim Regarding the *Cooley* Settlement is Frivolous

Defendant's argument that references to the *Cooley* settlement are confidential is an act of profound bad faith. The information was published in a national legal news outlet, Law.com, in an article for which Defendant himself was a source. (See Exhibit A). It is black-letter law that information placed in the public record cannot be deemed confidential. *See In re Alexander Grant & Co. Litig.*, 820 F.2d 352, 355 (11th Cir. 1987) ("The genie is out of the bottle.").

Making this argument sanctionable is the fact that Defendant's claim of confidentiality is knowingly false. On June 22, 2023, Plaintiff emailed the Law.com article directly to Defendant. Defendant's assertion—two years later—that this publicly reported information is confidential is a flagrant violation of his duty of "complete candor" as an officer of this Court. *Malautea v. Suzuki Motor Co., Ltd.*, 987 F.2d 1536, 1546 (11th Cir. 1993).

14

**V.    Defendant's Motion to Strike the Tolling Agreement is Barred
by the Plain Language of the Agreement Itself.**

Defendant seeks to strike the Tolling Agreement [Doc. 1, Ex. 43], an
argument that is directly contradicted by the plain language of the very
document he signed. The agreement contains a clause explicitly permitting its
disclosure to a court "as necessary to establish the tolling of any applicable
statutes of limitations." Plaintiff included the Tolling Agreement in his
Complaint for precisely this permissible and contractually authorized purpose.
[Doc. 1, ¶ 95]. The motion to strike it is frivolous.

## CONCLUSION

Defendant's Motion to Strike is a procedurally defective, substantively
bankrupt filing that rests on a knowingly false claim of confidentiality and a
gross misapplication of the Federal Rules of Evidence. It fails under this
Court's own precedent and is part of a broader, disturbing pattern of
procedural abuse by an officer of the Court. The Motion is a waste of judicial
resources and an attempt to hide the truth. It must be denied.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter an
Order:

(1)    DENYING Defendant's Motion to Strike [Doc. 5] in its entirety;

(2)    GRANTING such other and further relief as the Court deems just
and proper.

Respectfully submitted this 25th day of July, 2025.

Michael E. Sullivan, Jr.,
Plaintiff *pro se*
3324 Peachtree Road NE, Unit 1405
Atlanta, GA 30326
(678) 372-3000
msullivanjr@gmail.com

## EXHIBIT LIST

**Exhibit A**  June 22, 2023 email transmitting Law.com article

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE SETTLEMENT COMMUNICATIONS UNDER FEDERAL RULE OF EVIDENCE 408** was served upon Defendant's counsel by depositing the same in the United States Mail, first class postage prepaid, addressed as follows:

Chadwick L. Williams, Esq.
Kabat Chapman & Ozmer LLP
171 17th Street NW, Suite 1550
Atlanta, Georgia 30363

This, the 25th day of July, 2025.

Michael E. Sullivan, Jr.,
Plaintiff *pro se*
3324 Peachtree Road NE, Unit 1405
Atlanta, GA 30326
(678) 372-3000
msullivanjr@gmail.com

## FONT AND POINT CERTIFICATION

The undersigned Plaintiff hereby certifies that the within and foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO STRIKE SETTLEMENT COMMUNICATIONS UNDER FEDERAL RULE OF EVIDENCE 408** was prepared using Century Schoolbook, 13-point font in accordance with LR 5.1(C).

# EXHIBIT A

## June 22, 2023 email transmitting Law.com article

 Gmail

Michael Sullivan <msullivanjrlaw@gmail.com>

---

## How DeKalb Attorneys Leveraged Criminal Defense Connections in $1.87M Premises Liability Settlement

1 message

---

**Michael Sullivan** <msullivanjrlaw@gmail.com>
To: Mike Maloof <malooflawfirm@gmail.com>

Thu, Jun 22, 2023 at 1:10 AM

https://www.law.com/dailyreportonline/2023/06/21/how-dekalb-attorneys-leveraged-criminal-defense-connections-in-1-87m-premises-liability-settlement/?cmp_share

--

Sincerely,

**Mike Sullivan**

(678) 372-3000 | (678) 744-6028 | msullivanjrlaw@gmail.com

---

**How DeKalb Attorneys Leveraged Criminal Defense Connections in $1.87M Premises Liability Settlement Daily Report.pdf**
222K



# ALM | LAW.COM

**Page Printed From:**
**https://www.law.com/dailyreportonline/2023/06/21/how-dekalb-attorneys-leveraged-criminal-defense-connections-in-1-87m-premises-liability-settlement/**

f in 𝕐 🖨 ✉ ©        **NOT FOR REPRINT**

## How DeKalb Attorneys Leveraged Criminal Defense Connections in $1.87M Premises Liability Settlement

Andrew Lynch was familiar with the area from his early days as a criminal defense attorney. Co-counsel Mike Maloof described it as "a war zone."

June 21, 2023 at 05:57 PM

Premises Liability



**Alex Anteau**


f in 𝕐 🖨 ✉ ©

- Plaintiff's counsel said the case was tricky because the shooting in question took place between two properties, across an intersection.
- The area had been a problem for local law enforcement for years and police eventually provided testimony on the case.
- The case settled before trial, after defense counsel withdrew.

Personal injury lawyer Andrew Lynch and criminal defense attorney Mike Maloof recently secured a $1.87 million settlement in a DeKalb County State Court premises liability case.

Maloof said the plaintiff, a mother whose son was killed during a turf war between two gang members that spanned two gas stations in Stone Mountain, Georgia, "had just about given up on trying to find an attorney" when she brought her case to him.

The case was tricky because the deceased, a bystander, was killed in the crossfire between two gas stations on opposite sides of an intersection. However, Maloof said the family left a good impression on him and he was familiar with the area through his criminal defense work.

"I thought there may or may not be something there, but given what had happened and what [the family] described, it was definitely worth looking into," Maloof said. Lynch echoed this sentiment, and after the two did some digging Maloof came to describe the area as "a war zone."

In short, Maloof's instincts were right on the money. "The further we looked into it, really truthfully the case got better and better," Maloof said. "In premises cases, there are so many different grounds that can prevent any type of recovery, and as we went further and further into the case, it became more and more apparent that the typical outs in a premises case for a defendant were less, less than less available."

"The incident reports literally read like a novel," Lynch said.

With institutional knowledge of the county and their past experiences, the duo knew exactly where to look for the materials they needed to bring their case. "The interesting thing about criminal defense is that you know where all the information is," Lynch said.

"We went down and just knocked on the front door of the Tucker precinct, and a sergeant came out and he was a guy that we've known from the criminal court years before and, and he pretty quickly put us in touch with the officers who had first-hand information of telling the gas station that they had issues with gangs," Lynch said. "[They] eventually sat for depositions in the case and really helped us build the actual knowledge of the defendants' criminal activity at their premises."

John Blair of Levy, Sibley, Foreman & Speir represented the defense. According to his motion to withdraw, continued representation of the client would have violated the Georgia Rules of Professional Responsibility. Blair said, "The case settled—there isn't much more to it really."

The plaintiffs say they are happy with the outcome.

"[Our client is] a wonderful lady that never really had much of an interest in financial gain. Frankly, she wanted to settle the case without having to go to court but also was willing to let us go to trial," Lynch said. "She wanted the gas station closed and the gas station is now underground."

"[The family] was so delightful to [work] with," Maloof said. "If every client was like them, this would be the greatest job on the face of the earth."

The case is *Thornton v. Quick Stop Enterprises*, No. 20A78801, in the state court of DeKalb County.

Read an affidavit from the case below.



NOT FOR REPRINT

Copyright © 2023 ALM Global, LLC. All Rights Reserved.