# Exhibit 44

Sullivan Email (Apr. 15, 2024)

 Gmail

Michael Sullivan <msullivanjrlaw@gmail.com>

---

### Re: Lunch This Week to Discuss further LLC and how to get things started
1 message

**Michael Sullivan** <msullivanjrlaw@gmail.com>                                           Mon, Apr 15, 2024 at 6:41 AM
To: Mike Maloof <malooflawfirm@gmail.com>

Hi Mike,

I hope this email finds you well. I wanted to touch base regarding the issue of unpaid wages for work I performed at your law firm.

I've been looking for the opportune time to discuss resolving this matter, but unfortunately, our schedules haven't aligned recently. We didn't have a chance to meet for lunch in March, and last week's lunch was a bit hurried. Additionally, I understand that you have entrusted me with confidential information about unrelated personal and business operating expense concerns. I wanted to find the right time to discuss the unpaid wages separately to ensure that it doesn't affect our ability to communicate openly about other important issues.

Given the complexity of our situation and the importance of finding a fair resolution, I would like to propose that we consider binding arbitration to settle the unpaid wages issue. Binding arbitration is often faster and less expensive than litigation, and it allows us to maintain control over the process. By presenting our cases to a neutral third party, we can reach a final decision that we both agree to abide by. This approach can help prevent misunderstandings or disagreements in the future and provide a clear resolution.

Moreover, I believe it is crucial that we establish a framework to prevent similar issues from occurring in the future. The substantial amount of work I have done on State v. Sutton in March and April underscores the need for a clear understanding of our working arrangement going forward, if any, and compensation. I submitted the report two weeks ago, hoping that we would schedule a meeting to present my findings and answer any questions as well as determine how to equitably manage compensation for this. Your busy schedule has required your attention elsewhere, and I will follow up with you separately via email on this matter.

If you are open to the idea of binding arbitration, I would be happy to discuss the details further, such as selecting an arbitrator and defining the terms of the process. Please let me know your thoughts on this proposal.

I am committed to working with you to find a resolution that addresses both of our concerns and preserves our valuable friendship. I look forward to your response and to working together to resolve this matter amicably.

Sincerely,

**Mike Sullivan**

(678) 372-3000 | (678) 744-6028 | msullivanjrlaw@gmail.com

# Exhibit 45

## Maloof Email (Apr. 22, 2024)

 Gmail

Michael Sullivan <msullivanjrlaw@gmail.com>

## Re: Lunch This Week to Discuss further LLC and how to get things started
1 message

**Mike Maloof** <malooflawfirm@gmail.com>
To: Michael Sullivan <msullivanjrlaw@gmail.com>

Mon, Apr 22, 2024 at 6:54 AM

Also I want you to know I was thinking ██ ██ within 30 days, another ██ by the end of September and then ██ next year in the first quarter. I just want to structure it so I don't go broke and I took a lot of thought into the number. I think I wanted to pay 10 an hour in the beginning. It was never my intention to abuse your efforts and I think in the beginning the alignment was the same. I then took advantage of becoming accustomed to the relationship. I just think binding arbitration could go really south for me or a slight chance for you. It would air out some dirty laundry on both sides and if it went bad for me and messed up my relationships with those close to me, you being one of those relationships it would really weigh hard on me and create resentment I could not see myself overcoming. I want to be fair and it was never my intention to take advantage of your work. Think it over and we can go get lunch Wednesday or Thursday. C-Note could be a trial so if that happens it could be Wednesday I am on two hour call I think the first three days this week.
I am struggling with issues dealing with cash flow, but I am always struggling in that area. If I can get Liban on the right page or in another job then I got a machine moving in the right direction. Nanci is coming around, she is reading Dave Ramsey's book and Liban is starting to be forced to work which he is responding to positively. I just didn't want this to pop up right when I am unloading and dipping into my savings to pay the tax man. I was trying to get you some money last year when I was a little more flush, and I can get that amount to you within 30 days. I just wanted you to know where I am so you don't think I am trying to take advantage of you. I wish I was a better promoter and had client's with more resources or I think the LLC would be a great win-win. If you want to try that out with those payments into it, let me know. It could be a win win plus a tax right off for us both if it doesn't work. I just don't know if I can give the effort you want or deserve right now for building that kind of work. I value you as a friend and enjoy our chats. The problem for me with binding arbitration is three fold. If the number is too high say 100k and I can't pay it or every dollar in my savings goes to covering it I will be a wreck. It would require me to bring up stuff and you would respond that would look bad for us both. It costs money that we both would rather not spend. That affects me way more than you on the reputation because it is part of the Cabal. If both parties come away unhappy then we probably will not ever chat again. I will do it if you want. I would ask to do it in August after Wooten and Sutton. I hope you had a good weekend. The timing is the big issue right now. I want to get some money in your pocket and I think this year is looking really good for business. Let me know your thoughts.

Sincerely,

Mike Maloof, Jr.

# Exhibit 46

## Tolling Agreement (May 2, 2024)

# TOLLING AGREEMENT

This Tolling Agreement (the "Agreement") is entered into effective May 1, 2024, by and among Michael E. Sullivan, Jr., and W. Michael Maloof, Jr. (collectively, the "Parties").

**WHEREAS**, Michael E. Sullivan, Jr. and W. Michael Maloof, Jr. have maintained a professional relationship within the operations of Maloof's law firm, from approximately March 2022 to April 2024, during which unresolved issues related to compensation, claims of unjust enrichment, breach of fiduciary duty, and other related legal claims and remedies have arisen ("Potential Claims");

**WHEREAS**, the Parties are in the process of conducting good faith settlement discussions with respect to the Potential Claims;

**WHEREAS**, the Parties have agreed to restrict the assertion of time-related defenses with respect to any future lawsuit or administrative claim concerning the Potential Claims, and to toll the time accruing during this period for purposes of any statute of limitations, statute of repose, laches, filing deadline with any federal, state, or local court, agency, or commission, and/or any other time-related bar or objection which has not already run prior to the Effective Date (collectively, "Timing Defenses") as set forth in this Agreement; and

**NOW, THEREFORE**, in consideration of the mutual covenants hereinafter set forth, the Parties agree as follows:

1.  The "Effective Date" of this Agreement shall mean the date on which the last Party signs the Agreement.

2.  This Agreement shall terminate on the "Expiration Date," which shall mean the earliest of: (i) thirty (30) days after the Effective Date; or (ii) the first business day following five (5) days after the date of delivery of written termination notice, sent by overnight mail with a copy by email, return or read receipt requested, to the

undersigned counsel for the Parties. The period during which this Agreement is in force and effect shall be referred to as the Tolling Period.

3.  During the Tolling Period, the Parties shall not commence or institute any legal actions, including litigation, arbitration, or any other legal proceedings of any kind whatsoever, in law or equity, or assert any claim, demand, action, or cause of action concerning the Potential Claims.

4.  The Tolling Period shall be excluded from the calculation of time for purposes of any Timing Defense that may apply to any of the Potential Claims.

5.  Nothing in this Agreement shall affect any defense available to any Party as of the Effective Date of this Agreement. This Agreement shall not be deemed to revive any claim that is or was already barred on the Effective Date and shall not operate as an admission or acknowledgment by any Party that any applicable statute of limitations or other Timing Defense has expired or arisen as of the Effective Date. Nothing in this Agreement shall waive, diminish, shorten, or otherwise alter any other tolling and/or suspension of time that may be applicable to the filing of any claim by any Party.

6.  This Agreement shall not be construed as an admission of acknowledgment by any Party of any liability, fault, or wrongdoing, or as to the merits or lack thereof of any Potential Claims or otherwise.

7.  This Tolling Agreement constitutes the entire agreement between the Parties on the issues addressed herein and may not be modified, altered, or amended except by a writing signed by or on behalf of the Parties to this Tolling Agreement.

8.  This Tolling Agreement may be extended by further written agreement signed by or on behalf of the Parties.

9.  The provisions of this Agreement shall be binding upon the Parties, their successors, assigns and related or affiliated entities, and any entity claiming by or through the Parties.

10. If any provision of this Agreement is held illegal or unenforceable in any judicial or quasi-judicial proceeding, such provision shall be severed and shall be inoperative,

and the remainder of this Agreement shall remain operative and binding on the Parties.

11. Each of the Parties represents and warrants that he/she/it has full right, power, and authority to enter into this Agreement and to perform its obligations hereunder; and all action required to be taken for the due and proper authorization, execution, and delivery by it of this Agreement and the consummation by it of the transactions contemplated hereby has been duly and validly taken.

12. This Agreement is the product of negotiation among Michael E. Sullivan, Jr. and W. Michael Maloof, Jr. and shall be deemed as having been prepared jointly by them. The language of this Agreement shall be construed as a whole according to its fair meaning and not strictly for or against any party, regardless of who drafted or was principally responsible for drafting the Agreement or any specific term or condition thereof.

13. This Agreement is without prejudice to any other right, remedy, claim, or defense that may be asserted by, between, or among the Parties.

14. This Agreement shall be governed, construed, and enforced in accordance with the laws of the State of Georgia and applicable federal laws, including but not limited to the Fair Labor Standards Act (FLSA). In the event of any conflict between state law and federal law, federal law shall prevail.

15. The parties agree that all communications, negotiations, and documents exchanged between them during the settlement discussions, as well as the existence and terms of this Agreement, shall be kept strictly confidential and shall not be disclosed to any third party, except as required by law, court order, or with the prior written consent of both parties. The parties further agree to take all necessary steps to maintain the confidentiality of the settlement discussions, including but not limited to instructing their respective attorneys, representatives, and agents to maintain confidentiality. The confidentiality obligations set forth in this paragraph shall survive the expiration or termination of this Agreement. Notwithstanding the confidentiality obligations set forth in this Agreement, either party may disclose the existence and terms of this

Agreement to a court of competent jurisdiction as necessary to establish the tolling of any applicable statutes of limitations or other time-related defenses.

16. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which will constitute one instrument. Facsimile, electronic, scanned, and photocopied signatures shall be deemed originals for purposes of this Agreement. The parties agree to exchange executed counterparts of this Agreement by email or other electronic means, and such exchange shall constitute effective delivery of the Agreement.

17. This Agreement constitutes the entire agreement and understanding between the parties with respect to the subject matter hereof and supersedes all prior agreements, understandings, negotiations, and discussions, whether oral or written, between the parties relating to the subject matter of this Agreement.

**WHEREFORE**, the Parties, execute this Agreement intending to be legally bound hereby.

**MICHAEL E. SULLIVAN, JR.**

Signature: _____

Printed: MICHAEL E. SULLIVAN JR.

Date: May 1, 2024

**W. MICHAEL MALOOF, JR.**

Signature: _____

Printed: Mike Maloof, Jr.

Date: 05/02/2024

4

# Exhibit 47

Maloof Email (May 13, 2024)

 Gmail

Michael Sullivan <msullivanjrlaw@gmail.com>

---

**Re: Do you need help with your digital evidence?**
1 message

**Mike Maloof** <malooflawfirm@gmail.com>                                    Mon, May 13, 2024 at 8:03 AM
To: Michael Sullivan <msullivanjrlaw@gmail.com>

Mike I sent a tect earlier this morning.  For clarification I think this is the waive of the future for a new business.  It is a company outsourcing help for digital discovery.  They don't hole a candle to what I thin you are able to do and it is starting to enter the market place.  The problem is the lack of technical knowledge attorneys have, especially 40 and up.  I think create a powerpoint if you are interested we can get Sutton to waive privilege or redact the info provide it along with Ford and some other examples and just show what can be done.  Then use that as a basis for advertising examples and sales pitches.  I have sent a few attorneys your way but I think examples are coupled with results are the best form advertising if accompanied with an endorsement from another attorney.

Sincerely,

Mike Maloof, jr.

On Fri, May 10, 2024 at 11:16 AM Michael Sullivan <msullivanjrlaw@gmail.com> wrote:
Hello Mike,

Good morning. I received an email but I'm not sure if it was intended for me. Could you please clarify?

Thanks,
Mike

On Fri, May 10, 2024, 10:43 AM Mike Maloof <malooflawfirm@gmail.com> wrote:
Take a look at this.  It is what I was thinking.

The Maloof Law Firm
215 N. McDonough Street
Decatur, GA 30030

Tel 404-373-8000
Fax 404-378-3656
malooflawfirm.com

CONFIDENTIALITY NOTICE:  This e-mail and any attachments contain information from The Maloof Law Firm and are intended solely for the use of the named recipient(s).  This e-mail may contain privileged attorney/client communications and/or work product. Any dissemination of this e-mail by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing or usage of this e-mail or any attachment, or relying on any legal advice or information contained herein. No attorney-client relationship shall be created without an executed fee agreement or engagement letter. If you believe you have received this message in error, notify the sender immediately and permanently delete the e-mail, any attachment, and all copies thereof and destroy any printouts.

---------- Forwarded message ----------
From: **Jim Watt** <jwatt@beamcomputerforensics.com>
Date: Fri, May 10, 2024 at 9:31 AM
Subject: Do you need help with your digital evidence?
To: <malooflawfirm@gmail.com>

William,

We are here to take care of all your digital evidence needs so you can focus on getting the best result for your client. Our efficient and cost effective solutions provide you answers quickly and at price your client will appreciate. Contact me today for our full price sheet and to discuss your case.



Jim Watt
JWatt@BeamComputerForensics.com
Beam Computer Forensics, LLC
A: 3455 Peachtree Road NE, Suite 500, Atlanta GA 30326
T: (866) 707-2326 x701

The Maloof Law Firm
215 N. McDonough Street
Decatur, GA 30030

Tel 404-373-8000
Fax 404-378-3656
malooflawfirm.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from The Maloof Law Firm and are intended solely for the use of the named recipient(s). This e-mail may contain privileged attorney/client communications and/or work product. Any dissemination of this e-mail by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing or usage of this e-mail or any attachment, or relying on any legal advice or information contained herein. No

# Exhibit 48

Sullivan Email & Letter (May 31, 2024)

 Gmail                                          Michael Sullivan <msullivanjrlaw@gmail.com>

## Letter Regarding Unpaid Wages, Ethical Concerns, and Impending Litigation
1 message

**Michael Sullivan** <msullivanjrlaw@gmail.com>                    Fri, May 31, 2024 at 8:08 PM
To: Mike Maloof <malooflawfirm@gmail.com>

Dear Mike,

Please find attached a letter addressing the serious concerns I have regarding your conduct and the harm it has caused me. With the tolling agreement expiring tomorrow, I strongly urge you to review the letter carefully and respond promptly.

I hope we can resolve this matter amicably and justly.

Sincerely,

Mike Sullivan

(678) 372-3000 | (678) 744-6028 | msullivanjr@gmail.com

 **Correspondence to Mike Maloof Jr. 05-31-24.pdf**
37K

Michael E. Sullivan, Jr.
3324 Peachtree Road NE, Unit 1405
Atlanta, GA 30326
msullivanjr@gmail.com

May 27, 2024

Mike Maloof, Jr.
The Maloof Law Firm
215 N McDonough St
Decatur, GA 30030
malooflawfirm@gmail.com

RE:     Unpaid Wages, Ethical Concerns, and Impending Litigation

Dear Mike,

As the tolling agreement expires on June 1st, I am compelled to address the significant personal and professional impact your actions have had on me. While proper compensation is a critical concern, it is equally important to highlight the broader harm caused by your conduct.

After our nine-month attorney-client relationship ended in 2016, the subsequent period during which I provided services to your firm saw a clear blurring of boundaries and a concerning disregard for ethical principles. During the most vulnerable period of my life, I trusted you implicitly, and you exploited this trust, seeing me as someone who "has plenty of money and ... likes doing this stuff so I don't need to pay him."

Your offer of "paid but underpaid" employment, while ostensibly supportive, became a calculated move to profit from my misfortune. Your legal assistant resigned the day after my first day, and despite taking over five months to fill her position, you hired a replacement within 24 hours of my departure in August 2022.

Seven and a half years after my arrest, the State of Georgia offered a plea deal involving probation, which I dismissed to counsel's chagrin, prompting him to leverage you against my interests. You inserted yourself into this critical phase despite admitting to never reviewing discovery. Despite my consistent assertion of innocence, your position shifted overnight to pressuring me to accept a plea deal. You misused your authority to favor an outcome that would have ensured this letter was never sent. Days after my rejection of the plea, the proceedings terminated in my favor when the State moved to nolle prosequi the case, citing "severe evidentiary issues" apparent to anyone reviewing post-indictment discovery.

In July 2023, we investigated a premises liability action, and your colleague requested that I track my hours and invoice his firm. As someone with an undergraduate degree from Emory and two graduate degrees from Georgia State, I was excited to utilize my skills. Your colleague recognized the value of my work and wanted to ensure I was fairly compensated, but you denied me this opportunity, prioritizing your interests over what was right.

Despite this, I continued to trust you and felt compelled to provide work for free, hoping for future compensation. This continued through April 2024, when I spent over 50 hours subpoenaing and analyzing mobile phone records. My findings significantly changed the direction of the case, making a strong impact on the legal strategy. In exchange, you were too busy to review the 25-page report I authored. Attempts to schedule a meeting to discuss billing went unanswered. Finally, I sent you an email with an invoice, which you ignored.

Only recently have I admitted the lasting impact of prioritizing your wallet over my well-being. It has affected my personal and professional life and delayed my return as a contributing member of society. Your inconsistent narratives, shifting rationales, and lack of remorse have exacerbated the harm caused. Your concerns about the financial strain of a larger settlement or the airing of "dirty laundry" through binding arbitration prioritize your interests over justice and accountability.

I implore you to reflect on the gravity of your actions and their far-reaching consequences. This is not merely about unpaid wages; it is a breach of the ethical and moral obligations that define your profession. Such misconduct harms individuals like myself and erodes public trust in the legal system.

I remain open to a resolution that acknowledges the harm inflicted, provides appropriate compensation, and restores trust and integrity. However, should we fail to reach a satisfactory resolution, I will be forced to pursue litigation. I take no pleasure in this prospect but feel compelled to protect my rights and ensure justice. I will do so for two reasons: first, because it is time to move on with my life, and second, because the statute of limitations will eventually expire. I assume that the potential for litigation is the only reason you might do the right thing.

The decision to take such action is not one I make lightly. However, the severity of your transgressions leaves me with no alternative should you fail to take full accountability for your actions.

With the tolling agreement expiring tomorrow, I urge you to address these grievances promptly, with the integrity and accountability expected of your profession. The choice to act with integrity and honor the ethical responsibilities that govern our conduct is yours to make.

Your settlement offers, with drawn-out payment schedules and amounts that pale in comparison to the $25k you saved in 2022 alone, suggest a lack of genuine commitment to

making things right. Moreover, your claim that a fair settlement would lead to bankruptcy rings hollow, as I have never demanded a specific amount.

Sincerely,

Michael E. Sullivan, Jr.

# Exhibit 49

Maloof Email (Sep. 18, 2024)



Mike Sullivan <msullivanjr@gmail.com>

---

## Offer to Resolve all Issues
1 message

**Mike Maloof** <malooflawfirm@gmail.com>                         Wed, Sep 18, 2024 at 6:50 AM
To: Mike Sullivan <msullivanjr@gmail.com>

Mike I can make the offer I made before with an additional ███ so ███. The 15K refund you are demanding would have to be included. If you go to the bar for the refund I would not agree it was an offer without consideration (I believe the letter you alluded to in the demand letter shows this was good faith negotiations and not a firm offer but you are entitled to your opinion). The offer would be ███ in total. I could pay ███ next week on Friday next week or if my trial lasts through Friday then Sunday, Then ███ by the end of October and ███ by the end of March 2025. It would include any and all claims up to today's date.

If you go forward with the fee arbitration then the offer is rescinded. If you don't accept by the end of the month or go forward with any fee dispute or other action about my character with the bar then it is off. It would require confidentiality and an agreement to only have contact via non-recorded phone conversations or email. I wish it had not come to this but you are where you are. I tried to be congenial but I don't think you understand the level of pain it has put me through. I will never make this mistake again.

On a note unrelated to the offer, get some help with your resentments. I have acknowledged my mistakes. If you don't acknowledge yours with yourself not me then you will continue to be miserable. Your life is not over and I hope your medical condition, which I have not shared with anyone but Gunner as he is my law partner and needs to know what is going on with me, has gotten better. I would like you to do this so my mind can focus on helping my other clients. I know you keep track of me and my cases. I want to help Orpheus and I want to help Wooten.

Back to the offer, let me know when you decide, and I am sorry we can't be friends. I do forgive you but I can't let you in life. Any statements or recordings you possess as I know you record everything could not be disseminated and I would agree to not discuss any info I know about you that could be harmful. I hope you can move forward and I am offering what I can afford and what I think is more than fair given all circumstances.

Very Truly Yours,

Mike Maloof, Jr.

--

The Maloof Law Firm
215 N. McDonough Street
Decatur, GA 30030

Tel 404-373-8000
Fax 404-378-3656
malooflawfirm.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from The Maloof Law Firm and are intended solely for the use of the named recipient(s). This e-mail may contain privileged attorney/client communications and/or work product. Any dissemination of this e-mail by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing or usage of this e-mail or any attachment, or relying on any legal advice or information contained herein. No attorney-client relationship shall be created without an executed fee agreement or engagement letter. If you believe you have received this message in error, notify the sender immediately and permanently delete the e-mail, any attachment, and all copies thereof and destroy any printouts.

# Exhibit 50

## Proposed Settlement Agreement (Oct. 7, 2024)

**Settlement and Non-Disclosure Agreement**

This **Settlement and Non-Disclosure Agreement** ("Agreement") is made and entered into on this ___ day of October 2024, by and between:

- **Michael Sullivan** ("Sullivan"), and
- **The Maloof Law Firm** and **W. Michael Maloof, Jr.** ("Maloof"), both collectively referred to as "the Parties."

## 1. Settlement of Labor Disputes

1.1. **Payment Terms**: Maloof agrees to pay Sullivan the sum of ███████████ (███████) in full on or before **October 24, 2024.** 1.2. **Purpose of Payment**: This payment is made to settle and resolve all claims, disputes, or issues arising from the employment, contractual, or as a law clerk  between Sullivan and Maloof. This includes all claims, contract and tort disputes, beginning from **January 2022** until the present, including any related labor disputes.

## 2. Non-Disclosure Agreement (NDA)

2.1. **Confidential Information**: Both Parties acknowledge that, during the course of their relationship, they have obtained confidential information about The Maloof Law Firm's clients, business practices, and private conversations, both recorded and unrecorded that would benfit neither party via disclosure and will not be disclosed without the express permission of both parties.  This information if held in another individual's possession shall not be distributed as well.  If this information is distributed then civil action maybe brought by the aggrieved party. 2.2. **Obligations**: - Both **Sullivan** and **Maloof** agree not to disclose, share, or disseminate any information regarding current or previous clients of either party, or any confidential information acquired during their professional relationship. - Both Parties further agree that they will not disclose any private communications, whether recorded or not, to third parties, nor will they use such information to harm, defame, or cause detriment to each other. 2.3. **Survival of NDA**: This obligation shall remain in effect indefinitely, even after the termination of this Agreement.

## 3. Mutual Release of Claims

Upon the payment of the sum of ███████, both **Sullivan** and **Maloof** agree to release each other from any and all claims, demands, rights, damages, or causes of action of any kind, whether contractual, tortious, or statutory in nature, arising from or relating to their professional relationship as a law clerk, employee, or sub-contractor. This includes all claims existing as of the date of this Agreement.

## 4. Refund Demand Clause

Sullivan reserves the right to pursue his claim for a refund from Maloof. However, Sullivan may only utilize the **emails** and communications that were specifically provided to Maloof when

Sullivan sent his demand regarding the refund. No additional materials or correspondence outside of these initial communications may be used in support of this claim.

## 5. Governing Law

This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia.

## 6. Entire Agreement

This Agreement constitutes the entire understanding between the Parties with respect to its subject matter and supersedes all prior agreements, understandings, or negotiations, whether written or oral.

## 7. Signatures

This Agreement shall become effective and binding upon execution by both Parties.

_____

**Michael Sullivan**
Date: _____

_____

**W. Michael Maloof, Jr.**
Date: _____

# Exhibit 51

Sullivan Email (Oct. 1, 2024)

 Gmail

Michael Sullivan <msullivanjrlaw@gmail.com>

---

## Response to Settlement Offer and Notice of Fee Arbitration Filing
1 message

**Michael Sullivan** <msullivanjrlaw@gmail.com>                                   Tue, Oct 1, 2024 at 9:02 AM
To: Mike Maloof <malooflawfirm@gmail.com>

Dear Mr. Maloof,

Regarding your settlement offer dated September 18, 2024:

1. I am responding to accept your offer, subject to clarification of terms and addressing of certain concerns. While this response comes one day after your stated deadline, I trust that this minor delay does not materially affect the substance of our potential agreement, especially in light of the ethical considerations involved.

2. Please provide a detailed breakdown of all the settlement terms for my review.

3. I have filed for fee arbitration with the State Bar of Georgia regarding our fee dispute. This action was taken prior to this response and is within my rights as a client.

4. I have concerns about the proposed payment structure, specifically the spreading of payments over time. This arrangement could potentially violate Rule 9.2 of the Georgia Rules of Professional Conduct. The rule prohibits lawyers from attempting to condition the settlement of a client's civil claim on an agreement that would restrict the client's right to report the lawyer's conduct to disciplinary authorities. The current structure, with payments spread out, could be interpreted as an attempt to maintain control and discourage the reporting of any potential ethical violations. To address this concern and ensure full compliance with Rule 9.2, I propose that we consider a lump sum payment instead.

5. Be advised that any confidentiality provisions may be unenforceable in this context.

I look forward to discussing these matters further to find a resolution that complies with all applicable ethical standards and bar rules. Please confirm receipt of this email and your willingness to proceed with our agreement despite the brief delay in my response.


Sincerely,


Michael E. Sullivan, Jr.

# Exhibit 52

Maloof Email (Oct. 8, 2024)

 Gmail

**Michael Sullivan <msullivanjrlaw@gmail.com>**

## Re: Agreement
1 message

**Mike Maloof** <malooflawfirm@gmail.com>                                    Tue, Oct 8, 2024 at 7:50 AM
To: Michael Sullivan <msullivanjrlaw@gmail.com>

It should have said rejecting the offer typo on my part.

On Tue, Oct 8, 2024 at 7:49 AM Mike Maloof <malooflawfirm@gmail.com> wrote:
That is certainly your prerogative so you are regretting the offer.

Sincerely,

Mike Maloof, Jr.

# Exhibit 53

## Maloof Email (Feb. 4, 2022)

 **Gmail**

Mike Sullivan <msullivanjr@gmail.com>

___

## Re: Mike Sullivan OL.docx
1 message

___

**Mike Maloof** <malooflawfirm@gmail.com>                    Fri, Feb 4, 2022 at 3:14 PM
To: msullivanjr@gmail.com

Mike I will send to Don on Monday.  I am sure it is written better than anything I would put together.  I will call on Sunday.

Sincerely,

Mike Maloof, Jr.
On Fri, Feb 4, 2022 at 1:50 PM Mike Sullivan <msullivanjr@gmail.com> wrote:
> Mike,
>
> **Please discard the first version and use the attached instead ("rev2")**.  I found several immaterial errors that
> warranted correction.  My apologies for the multiple emails.
>
> Best Regards,
>
> **Mike Sullivan**
>
> 📱 (678) 372-3000 | 📞 (678) 744-6028 | ✉ msullivanjr@gmail.com
>
>
>
> On Fri, Feb 4, 2022 at 12:58 PM Mike Sullivan <msullivanjr@gmail.com> wrote:
>> Mike,
>>
>> Here is my **first cut** at creating an offer letter (I _assume_ this is the "draft of the letter [Mike Maloof] will write to
>> document his agreement to have you work in his office" **mentioned by Don in his SMS to me this morning**).
>>
>> I think it is what he is looking for, but also was not a party to that discussion.  I started drafting this earlier this week
>> assuming it may be needed – it is decent – but also warrants your professional review.  I made numerous
>> assumptions that are explicitly your call to make. Candidly, I feel as though I'm overstepping here, but I doubt you see
>> me "lending a hand" as such.  That being said, I'm happy to assist with amending as you see fit, e.g. if you are driving
>> and want to dictate amendments, that works for me.
>>
>> **Thank you so very much.**
>>
>> NB: Metadata wiped as discussed.



Best Regards,

**Mike Sullivan**

📱 (678) 372-3000 | 📞 (678) 744-6028 | ✉ msullivanjr@gmail.com

--
The Maloof Law Firm
215 N. McDonough Street
Decatur, GA 30030

Tel 404-373-8000
Fax 404-378-3656
malooflawfirm.com

CONFIDENTIALITY NOTICE: This e-mail and any attachments contain information from The Maloof Law Firm and are intended solely for the use of the named recipient(s). This e-mail may contain privileged attorney/client communications and/or work product. Any dissemination of this e-mail by anyone other than an intended recipient is prohibited. If you are not a named recipient, you are prohibited from any further viewing or usage of this e-mail or any attachment, or relying on any legal advice or information contained herein. No attorney-client relationship shall be created without an executed fee agreement or engagement letter. If you believe you have received this message in error, notify the sender immediately and permanently delete the e-mail, any attachment, and all copies thereof and destroy any printouts.

# Exhibit 54

## Recorded Call Excerpts

| Date | Quote |
|---|---|
| **January 10, 2023** | "I will lie. Um, that's a character defect." |
| **July 24, 2023** | "I put $50,000 away in a savings account, you know, to figure out what I want to do with it for the firm. I put, you know, there's another ... At the end of this month, if we have a decent week this week, we're going to have $200,000 in the operating account." |
| **August 15, 2023** | "I have hired you, you know, as a law clerk, you know, unpaid law clerk." |
| **August 18, 2023** | "I got a pretty good law clerk for free." |
| **October 22, 2023** | "I don't go to other people and ask them to work for fucking free, except for you, for some fucked up reason. That's wrong." |
| **October 22, 2023** | "those two cases, let's see, one hundred and three eighty one twenty and three eighty. So it's brought in half a million dollars in extra revenue in the last. And that's all my savings and extra paid for my the majority of my wedding." |
| **December 8, 2023** | "Okay, but if I wrote you a refund, is that you pay taxes on a refund? A refund. You paid me, remember, you paid me $15,000 years ago on your case ... Because that way, you know, that was not, that was like buying a service, right? You've gotten, you've refunded your service, right? ... and then I get to write off the $15,000 and then I get to pay, it's like, oh, I had to refund money. So, it's completely deductible and you get $15,000 back that you paid me that you'd already paid taxes on, right? And so, it's a refund to you and then you don't have to pay back." |
| **March 6, 2024** | "we brought in 100k in January, which was without any civil shit, you know, just... So that's up there, |

| Date | Quote |
|------|-------|
|  | right? Like, that's really up there. That, for me, is double... That's two times a good month. A good month is 50k." |

FILE INTO CASE
**1:25-cv-02006-JPB**
Sullivan v. Maloof

Filer: Michael E. Sullivan Jr.